IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

JOEL STINSON,

                   Plaintiff,

  Vs.                                             No. 14-4094-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                   Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that granted the claimant Joel Stinson's ("Stinson") Title II application for disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act ("Act") for a disability beginning on September 1, 2012, rather than the claimant's alleged onset date of January 17, 2011. The issue on appeal is whether the Administrative Law Judge ("ALJ") erred in not consulting with a medical advisor in the determination of Stinson's onset date of disability because the evidence surrounding the onset of this non-traumatic impairment was ambiguous.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the

correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy. . . ." 42 U.S.C. § 423(d)(2)(A).

Stinson's sole issue on appeal is whether the ALJ erred by not following Social Security ("SSR") 83-20 and calling upon the services of a medical adviser to assist in inferring the onset date of the non-traumatic impairment from ambiguous medical records. "SSR 83-20 is 'binding on all components of the Social Security Administration,' including ALJs, 20 C.F.R. § 402.35(b)(1), and sets forth an analytical framework for assessing the date of onset for a disability of traumatic or non-traumatic origin." *Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006). For disabilities with a non-traumatic origin, which is the case here for Stinson, SSR 83–20 describes the onset determination as involving three considerations:   the individual's allegations as to when the disability begun, the work history, and the evidence, medical and otherwise, on the impairment's severity. SSR 83–20, 1983 WL 31249 at *2. The onset determination starts from the claimant's allegation and frequently gives "great significance" to when the impairment "caused the individual to stop work." *Id.* "The medical evidence serves as the primary element in the onset determination." *Id*.

At the same time, "[w]ith slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id*. In these instances, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id*. Of course, "the

established onset date must be fixed based on the facts and can never be inconsistent with medical evidence of record." *Id*. at *3. Specifically, SSR 83-20 provides:

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical adviser when onset must be inferred.

*Id*. at 3. The Tenth Circuit has construed and applied this provision of SSR 83-20 in the following manner:

> In contrast to the Commissioner's argument, our precedent clearly establishes that where "medical evidence of onset is ambiguous," an ALJ is obligated to call upon the services of a medical advisor. *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.1995); *see also Grebenick* [*v. Chater*], 121 F.3d [1193] at 1201 [(8th Cir. 1997)] ("If the medical evidence is ambiguous, and a retroactive inference is necessary, SSR 83–20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.' "); *see also Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("[I]f the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires.").

*Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006). Consistent with this decision, courts have construed SSR 83-20 as requiring, whenever the medical evidence of onset is ambiguous, that the ALJ call upon the services of a medical adviser to insure the onset determination is based on a legitimate medical basis. *See, e.g.*, *Bigpond v. Astrue*, 280 Fed. Appx. 716, 717 (10th Cir. May 30, 2008); *Spencer v. Colvin*, 2015 WL 790027, at *6 (D. Kan. Feb. 2, 2015); *Bailey v. Colvin*, 2013 WL 954988, at *3 (E.D. Okla. Mar. 12, 2013); *Burgess*

4

*v. Astrue*, 2012 WL 5949212, at *3 (D. Kan. Nov. 28, 2012). The Tenth Circuit also has stated that, "'[i]n the absence of clear evidence documenting the progression of claimant's condition, the ALJ does not have the discretion to forgo consultation with a medical adviser.'" *Blea*, 466 F.3d at 911-12 (quoting with changes *Bailey*, 68 F.3d at 79). In sum, the ALJ will have erred here in not calling a medical adviser to determine the onset date if the evidence relevant to the onset of Stinson's disabilities was ambiguous, or if the medical evidence did not clearly document the progression of Stinson's conditions. *Blea*, 466 F.3d at 912.

While finding that Stinson could perform his past relevant work prior to September 1, 2012, the ALJ concluded that Stinson was disabled thereafter due to an increase in kidney stones that required more medical care and caused more symptoms which interfered with his ability to perform regular and continuing work. (R. 21). The ALJ's decision notes that Stinson's treating physician, Dr. Marcellino completed a medical source statement dated February 2012, indicating "that the claimant is unable to have any form of gainful employment, due to unpredictable kidney stones, causing intractable nausea and pain and making it difficult for him to get out of bed" and "that claimant would be absent from work more than four days a month." (R. 19). The ALJ, however, concluded that, "[e]ven though the claimant clearly has a well-established treatment relationship with Dr. Marcellino, his opinions are

not supported by the medical evidence of record" and were entitled to "little weight" for the time period before September 1, 2012. (R. 19-20). The ALJ relied instead on two state agency medical consultants, in particular the second consultant, who "gave a larger picture of the claimant's condition," that is, "[t]he claimant lives alone, does not require outside help and reports a good ability to walk. He also reported having little difficulty when he was not passing kidney stones." (R. 20). The ALJ also looked to Dr. Marcellino's treatment notes indicating that Stinson lived alone, took care of a dog, and handled an apartment move mostly by himself. In deciding the onset date of the Stinson's disability, the ALJ did not use the services of a medical adviser.

The Commissioner advocates for reading SSR 83-20 more narrowly than was done in *Blea* and for factually distinguishing *Blea*. Neither argument is tenable. The Tenth Circuit's construction of SSR 83-20 does not appear to have been influenced by any facts or circumstances unique in *Blea.* Instead, the Tenth Circuit first offered its reading of the plain terms of SSR 83-20 before making any application to the particular facts before it. The *Blea* decision is controlling upon this court. "If the medical evidence is ambiguous, and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor." 466 F.3d at 911 (quoting *Grebenick*, 121 F.3d at 1201). The Commissioner's additional efforts to factually distinguish the results in *Blea* are addressed below.

Seeking to frame this issue as one over the quantity of medical evidence rather than the ambiguous character of the evidentiary record, the Commissioner focuses on what she regards as "significant medical evidence from both before and after the alleged onset date of disability in January 2011" and then refers to the plaintiff's summary of that medical evidence appearing in his statement of facts (Dk. 9, pp. 3-5). (Dk. 12, p. 5). The Commissioner summarily concludes the same to be "clear evidence documenting the progression" of the claimant's condition. *Id.* at 4. The Commissioner singles out from that evidence the one and one-half year gap in medical records that ended with Stinson's resumed medical treatment in July of 2011 and a visit to his urologist whose records indicated that Stinson's kidney stone pain began "two days ago." (Dk. 12, p. 5). According to the Commissioner, the ALJ had enough evidence that was sufficiently clear and unambiguous in character from which to infer an onset date without the assistance of a medical adviser.

The plaintiff's summary of his medical treatment begins with evidence of kidney stones in 2008 occurring with such frequency that narcotic medications are prescribed repeatedly, surgery is contemplated, and other procedures are used. There is a gap in the medical records of treatment from the end of 2009 through July of 2011, when Stinson was seen by Dr. Marcellino and diagnosed with chronic kidney stones. In September of 2011, Dr. Marcellino records as the patient history:

7

> Extremely depressed, he admits that this has been going on for a long time. Related to his disabling pain from kidney stones. He has lost his job, his house in foreclosure. He has had suicidal thoughts, no specific plan or doesn't plan to act at this time. His family is mostly aware of his depression. He can't get out of bed at times. He doesn't like to go out into public.

(R. 428). He was referred to a pain management clinic, and at his first visit in September of 2011, this history was recorded:

> He has been to urologist who has confirmed that he has frequent stones. The patient states that he is in pain 80% of the days out of a month and each day he has pain he has pain for about 80% of that day. He averages about 150 mg. of oxycodone a day. He has taken other medications, but that seems to work the best for him. On a Visual Analog Scale of 0-10, the pain at its worse is a 10, usually it is a 6-7. The pain is in his flank bilaterally and in the low abdomen.

(R. 605). Also in September, Stinson was seen by Dr. Solcher who reviewed with Stinson the testing results and possible issues for reducing "his stone burden." (R. 404). In January of 2012, Dr. Solcher wrote that Stinson "continues to have some symptoms" and that in the physician's opinion Stinson "is maximized from a medical standpoint for stones." (R. 665).

Stinson was taken to the emergency room on November 3, 2011, for a psychiatric screening evaluation. (R. 573). On December 11, 2011, Stinson arrived at the emergency room with intractable abdominal pain, and the medical records from that treatment included this history:

> The patient does have a history of chronic pain syndrome due to recurrent nephrolithiasis and ureterolithiasis. He states he passes a calcium oxalate stone at least one time per day and he passed a maximum of 16 stones in one day. He is followed by Dr. Well, as well as Dr. Solcher, for his recurrent stone formation. He does see the pain clinic

>for this as well and takes Opana extended release, as well as immediate release, daily to control is pain.

(R. 550). On January 11, 2012, Stinson went to the emergency room with nausea and vomiting from pain. The day after he was discharged, he returned to the emergency room with flank pain so severe that he could not keep down his medication. (R. 640). The plaintiff's summary of his 2012 emergency room/hospitalizations includes times in April, two in May, and several in September. (Dk. 9, p. 5).

On February 22, 2012, Dr. Marcellino completed a physical residual functional capacity questionnaire noting that he had been treating Stinson since July of 2011 for among other things, chronic kidney stones, depression, and chronic pain. Dr. Marcellino described Stinson's pain as, "severe sharp intermittent abd, flank pain sometimes daily." (R. 676). As far as treatment, Dr. Marcellino noted that Stinson was receiving from the pain clinic medication that would cause drowsiness and nausea. *Id*. In describing Stinson's limitations, Dr. Marcellino indicated that his impairments would result in good and bad days and in absences from work "[m]ore than four days per month." (R. 679).

The court rejects the Commissioner's position that the quantity of medical evidence necessarily rules out ambiguity in the medical evidence. The Tenth Circuit in *Bigpond* did distinguish *Blea* insofar as its holding that an "ALJ could not reasonably draw negative inferences from the lack of medical

9

records." 280 Fed. Appx. at 718. The panel in *Bigpond* recognizes that ambiguity may also exist when the medical evidence relates to the relevant time period and shows the "possibility" of an earlier onset date. *Id.* at 718-19. The holding in *Bigpond* keys on the medical evidence not being ambiguous as it clearly documented a condition that did not become disabling until long after the claimant's last insured dated. *Id*. at 718.

Unlike *Bigpond*, the medical evidence of record here is ambiguous as to the onset date of the plaintiff's disability. As summarized above, there is more than enough evidence to create the real possibility that the plaintiff's chronic kidney stones and pain became disabling before September 2012, and this ambiguity required the assistance of a medical advisor for the ALJ to determine the onset of disability. Instead, the ALJ singled out and largely relied on the number of Stinson's emergency room visits in inferring the onset date while discounting medical evidence pointing to an earlier date. "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." SSR 83-20, 1983 WL 31249 at *3. Because of the ambiguity in the medical evidence about the onset date of Stinson's disability, the ALJ was required to consult a medical adviser pursuant to SSR 83-20. The Commissioner's decision must be reversed, and the case is remanded for compliance with SSR 83-20. On remand, the ALJ is to call a medical advisor on the issue of the claimant's onset of disability and then

make a redetermination of when the claimant became disabled. Having found that the ALJ failed to follow and apply the correct legal standards, the court cannot say that the Commissioner's decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) reversing and remanding the Commissioner's decision for further proceedings consistent with this memorandum and order.

Dated this 30th day of November, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge